UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-cv-14188-MIDDLEBROOKS/LYNCH

JOEL WESLEY TRASK,

    Petitioner,

v.

MICHAEL D. CREWS, Secretary,
Florida Department of Corrections,

    Respondent.
_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon the Report and Recommendation [DE 10] ("Report") of Magistrate Judge Frank J. Lynch, issued on August 22, 2015. Petitioner Joel Wesley Trask ("Trask") filed Objections ("Objections") to the Report on September 4, 2014. For reasons that follow, I decline to adopt the Report in its entirety, but adopt it to the extent explained below and its conclusion to deny Trask's petition.

### I.     Background

Between 12:30 a.m. and 1:00 a.m. on July 15, 2007, Christina McGlynn ("McGlynn") and Jennifer McCollough ("McCollough") were lost, driving through Trask's neighborhood. Trask came out onto the street with a rifle, and approached the car in a belligerent manner. The driver slammed the car into reverse, and in doing so, broke the car's transmission, leaving them unable to drive away. Trask threatened to shoot McGlynn and McCollough if they did not leave. Then, Trask's rifle discharged in the women's direction. Trask retreated into his home, and then returned to the street unarmed. Again, Trask confronted McGlynn and McCollough, asking them

why they still had not left and asserting that he "should have blown their heads off." After Trask returned inside his home, the car's occupants, and their friends who had come to help, pushed the car away.

Deputy Iglesias arrived shortly thereafter. Trask essentially confessed to the assault, telling Iglesias that he approached "these kids" who were "speeding through the neighborhood." While Trask admitted that he approached McGlynn and McCollough with a rifle, he maintained that he never had any intention of firing it. Instead, he merely wanted to scare McGlynn and McCollough. However, the rifle discharged accidentally. Iglesias noted that Trask had slurred speech, bloodshot eyes, and smelled of alcohol. Trask was charged by Information on August 14, 2007 with two counts of aggravated assault with a deadly weapon (Counts I-II), one count of discharging a firearm in public (Count III), and one count of using a firearm while under the influence (Count IV). [DE 1].

At the time of the incident in question, Trask had been diagnosed as Bipolar with schizophrenic tendencies. [DE 6-8, Trans. Evid. Hearing, 68, 93]. Although Trask's attorney Charles Nervine ("Nervine") filed a motion seeking the appointment of Dr. Riordan to evaluate Trask's competency to stand trial and his sanity at the time of the offense, Nervine never followed up with Dr. Riordan or read Dr. Riordan's report, which concluded that Trask was insane at the time of the offense. In addition, Nervine failed to investigate Trask's mental health history through any other means.

On January 9, 2008, Nervine filed a demand for speedy trial. [DE 6, Ex. 6 Demand for Speedy Trial]. It is unclear whether Trask consented to or had knowledge of the speedy trial demand. [Trans, 2-3]. Trask and Nervine appeared before the state trial court for jury selection. When the case was called to begin, Nervine announced that the defense was ready. Trask then

interjected and asked the court to continue the trial. Trask explained to the court that while he knew that his attorney had his "best interests in mind" in demanding a speedy trial, he "didn't ask for it" and "didn't know [Nervine] . . . asked for it." [DE 6-7, Ex. 18 at 3].

The trial court denied Trask's request, and the case was tried before a jury. During trial, Nervine did not present an insanity defense. The jury found Trask guilty of Counts I-III and acquitted Trask on Count IV. The trial court sentenced Trask to two 20-year terms of imprisonment on Counts I and II to run concurrently. This was the minimum mandatory sentence under the state's 10/20/Life Statute.[1] Trask was not sentenced on Count III, as it was dismissed on double jeopardy grounds. The conviction was summarily affirmed on appeal. *See Trask v. State*, 13 So. 3d 484 (Fla. 4th DCA 2009).

Trask later sought post-conviction relief in state court, claiming he had been denied effective assistance of counsel. Specifically, Trask claimed his counsel rendered ineffective assistance because he (1) failed to investigate and present an insanity defense, and (2) failed to consult Trask about a speedy trial demand.[2] *See* [DE 6-7, Ex. 18 Motion at 13]. The state post-conviction court did not expressly address the first prong of *Strickland* (*i.e.*, whether Nervine's performance was deficient). *See* [DE 6-9, Ex. 24, Order at 95]. Instead, the court concluded that "[e]ven if this Court finds the first prong of <u>Strickland</u> being established, the Defense . . . has not met the second prong," concerning prejudice. [*Id.*].

On May 7, 2014, Trask filed a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254, seeking relief from his conviction on the basis of two claims of ineffective assistance of counsel. [DE 1]. Specifically, Trask argues that he is entitled to habeas relief

---

[1] The sentencing order [DE 6-5, Ex. 13] suggests a prior conviction for cocaine possession.
[2] It is unclear whether the state post-conviction court considered or ruled on the ineffective assistance of counsel claim related to the speedy trial demand.

3

because his trial counsel rendered ineffective assistance by: (1) failing to investigate and present an insanity defense; and (2) filing a speedy trial demand before adequately investigating the case and without Trask's consent or awareness. [DE 1, Petition at 6].

In the Report, Magistrate Judge Lynch finds "after *de novo* review"[3] of "both claims of relief, [Trask] fails to meet the *Strickland* standard for ineffective assistance of counsel." [DE 10, Report at 18] (emphasis altered). Specifically, the Report provides:

> The Petitioner does not contend that his attorney acted without regard to the circumstances. To the contrary, defense counsel had reasons for pursuing the course that he did. This Court sees no deficient performance or prejudice from the attorney's attempt to leverage the benefits of speedy trial to the Petitioner's advantage. Nor does this Court see deficient performance or prejudice from the attorney's decision to pursue a temporary insanity defense no further than he did. By eschewing the non-meritorious insanity defense, the attorney could better pursue other, stronger defenses. By eschewing the temporary insanity defense, the defense attorney de-emphasized the evidence of alcohol and pain medication consumption, thereby likely obtaining the Count IV [using a firearm under the influence] acquittal. Had the jury instead found the Petitioner guilty of Count IV, it is possible that his sentence would have been longer than the minimum mandatory sentence that was imposed just for Counts I and II, Such strategic decisions are entitled to deference.

[*Id.* at 19-20]. Accordingly, the Report recommends that the Petition [DE 1] be denied. [*Id.* at 20].

On September 9, 2014, Trask filed Objections ("Objections") to the Report, arguing that Trask's ineffective assistance of counsel claims should not be rejected. [DE 11]. First, Trask argues that the Report failed to apply the appropriate standard of review. In addition, he argues that the Report "not only fails to address Mr. Trask's assertions about erroneous factual conclusions reached by the state circuit court, but it makes findings that were never even made

---

[3] It is unclear which standard of review the Report actually analyzed Trask's claims under. *See also* [DE 10 at 9] ("[t]his Court does not consider the Strickland claims de novo. Rather, the Petitioner's claims of ineffective assistance of counsel must be viewed through the prism of . . . [28 U.S.C.] §2254(d) deference.").

4

by the state court, never suggested by the Respondent, and are barren of any factual support in this record." [Objections at 7-8].

## II.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a federal court may not grant a habeas corpus application with respect to any claim that was adjudicated on the merits in State court proceedings, 28 U.S.C. § 2254(d), unless the state court's decision was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, § 2254(d)(1)." *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1325 (11th Cir. 2013) (internal quotations and citations omitted). The standard is "a highly deferential one" that "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). As the Eleventh Circuit has explained, "[t]he decision of a state court is not 'contrary to' federal law unless it 'contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts.'" *Evans*, 703 F.3d at 1325 (quoting *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1355 (11th Cir. 2009)). "The decision of a state court is not an 'unreasonable application' of federal law unless the state court 'identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply.'" *Id.* "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

"To obtain habeas relief a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Reese v. Sec'y, Florida Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) (internal quotations and citation omitted). "When evaluating a state prisoner's petition, a habeas court must determine what arguments or theories supported or, if none were stated, could have supported the state court's decision; and then it must ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court." *Evans*, 703 F.3d at 1326.

In addition, section 2254 "imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing." *Cullen v. Pinholster*, 563 U.S. 170, 131 (2011). Specifically, "the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Id.*

### III. Discussion

Trask argues that he is entitled to habeas relief because his trial counsel rendered ineffective assistance by: (1) failing to investigate and present an insanity defense; and (2) filing a speedy trial demand before adequately investigating the case and without Trask's consent or awareness. [DE 1, Petition at 6].

To prevail on his claim that his trial counsel rendered ineffective assistance, Trask "must establish both that trial counsel's performance was deficient, and that the deficiency prejudiced the defense." *Evans*, 703 F.3d at 1326 (internal quotations omitted). Even assuming that Nervine's performance was deficient, the Court finds that Trask fails to establish prejudice for reasons that follow. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("If it is easier to

6

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

To establish prejudice, a petitioner must "show[] that [his] counsel's errors were so serious as to deprive the [petitioner] of a fair trial." *Id.* at 687. This requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, it is not required that a petitioner show "'that counsels deficient conduct more likely than not altered the outcome' of his penalty proceeding, but rather that he establish 'a probability sufficient to undermine confidence in [that] outcome.'" *Porter v. McCollum*, 558 U.S. 30, 44, (2009) (quoting *Strickland*, 466 U.S. at 693-94).

### 1. Demanding Speedy Trial Without Consulting Trask or Sufficiently Investigating Case

It is unclear whether Trask's ineffective assistance of counsel claim relating to the speedy trial demand was adjudicated on the merits in the underlying state court proceedings. However, even considering the claim under *de novo* review, the Court finds that Trask fails to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Although Trask identifies four witnesses he intended to call,[4] he fails to indicate what exculpatory evidence might have been obtained if his counsel had not demanded a speedy trial. Specifically, Trask fails to demonstrate how these witnesses' testimony could have overcome the otherwise very strong evidence of aggravated assault. Trask's *pro se* Amended Motion for a New Trial, which summarizes their expected testimony, indicates that the witnesses' expected

---

[4] Trask intended to call two neighbors, his wife, and a psychiatrist he began seeing *after* the incident as witnesses.

7

testimony would not have contradicted the basic facts of the alleged aggravated assault. Instead, it appears that their testimony would have supported an insanity defense.

### 2. Failing to Investigate and Present an Insanity Defense

Turning to Trask's second ineffective assistance of counsel claim, the Court notes that this claim was clearly adjudicated on the merits in the underlying state court proceedings. The state court held an evidentiary hearing on this claim and called Dr. Riordan to testify. The state court described Dr. Riordan's testimony as follows:

> Dr. Riordan said that the defendant had a documented history of mental illness at New Horizons. According to Dr. Riordan the defendant had anger management problems and the defendant claimed he was bipolar. The defendant had been court ordered to submit to substance abuse treatment in 1989, attend A.A. meetings and attended Recovery Associates. The defendant said he had been treated by a psychiatrist in the past. The defendant had been in two auto accidents two days apart in April 2006. According to Dr. Riordan, the defendant told him he (the defendant) had been rear ended, there was a question that he suffered whiplash and sometimes this results in undetected brain injury. The defendant told Dr. Riordan he had been diagnosed thirteen years ago of being diabetic that had not been well controlled according to the records. Dr. Riordan speculated that the defendant's use of alcohol did not help with the diabetes. Dr. Riordan said the diabetes could lead to delirium. Dr. Riordan discussed the events on the night in question with the defendant. Dr. Riordan said in his opinion the defendant was insane at the time of the offense. . . . Specifically, Dr. Riordan said he thought this defendant was insane because of a panic attack prior to the offenses and the car accidents he was in causes him a high level of anxiety when he is exposed to drivers driving recklessly and interferes with his ability to think clearly. But, according to Dr. Riordan, his thinking may have been affected by the diabetes, along with the alcohol use and observing reckless cars caused him not to know he was committed an offense.

[DE 6-9, Ex. 24, Order at 91, 96]. The state court also noted that much of the information Dr. Riordan relied upon in his report was self-reported by Trask. [*Id.* at 98]. Implicit in the state court's discussion of Dr. Riordan's testimony is a finding that Dr. Riordan was not persuasive. In addition to Dr. Riordan's expert report, during the evidentiary hearing, the state court was also in possession of Dr. Edney's expert report. The state court noted that Nervine's supervisor

8

Stanley Glenn ("Glenn") testified that another expert, Dr. Edney, examined Trask, and determined that Trask was both competent to stand trial and sane at the time of the offense. [*Id.* at 94]. The state court also observed:

> The state had two witnesses, Ms. McCullough and Ms. McGlynn, who testified about the defendant's actions that night consisted of pointing a rifle at them and firing a round towards their vehicle. After this, tellingly, this allegedly insane defendant goes back to his residence and hides the rifle. This allegedly insane defendant told law enforcement within minutes after the incident that he used a 30.30 (rifle) to scare them (the victims). He told them he had been drinking, but was not driving. He was cursing at the victims and telling them to stop speeding. The defendant told the police he did not mean to fire the rifle he just meant to scare them, and threatened to kill the victims if they didn't move the car. Before all this occurred, of course, he knew where in his home to retrieve the rifle.

[*Id.* at 96]. The state court noted Dr. Riordan's failure to explain "when exactly [Trask] suddenly became insane and at what point he exited this state of insanity, and became sane again., *e.g.* before or after he hid the rifle after the gunfire?" [*Id.* at 97]. The state court also noted that "[n]obody from the Defense ever addressed the hiding of the rifle." [*Id.*].

In his Objections, Trask argues that AEDPA deference is not applicable here because in addressing the prejudice prong, the state court "wrote that Mr. Trask had to show that 'the jury verdict would [] have changed,' that 'the jury would have acquitted,' him, . . . and/or that Trask had to prove that the outcome "would [] have changed."' [DE 1 at 60]. The state's court analysis, Trask argues, is therefore contrary to *Strickland*, which only requires Trask to establish that "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (emphasis added).

It is true that *Strickland* does not require certainty that the result would have been different, or even "that counsel's deficient conduct more likely than not altered the outcome in the case." *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002). However, when the state court's order is read in its entirety, it appears the court did not require Trask to demonstrate that

9

the outcome would have changed. For example, the state court found that Trask did not establish prejudice because "even if D. Riordan were in fact called to testify and present an insanity defense to the jury, the jury verdict *would not have changed <u>or it would be sheer speculation</u> to conclude the jury would have acquitted the defendant based on insanity*." [DE 6-9, Ex. 24, Order at 47]. As the Supreme Court has explained, to establish prejudice, a petitioner must demonstrate that "[t]he likelihood of a different result [is] substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Further, in light of the conflicting expert reports presented to the state court at the evidentiary hearing and the state court's implicit credibility determinations, the state court reasonably found that Trask had not demonstrated prejudice.

Thus, based on the record before the state court, it was reasonable for the court to conclude that Trask had failed to establish a reasonable probability that but for Nervine's failure to investigate and present an insanity defense, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Therefore, the state court's decision to deny Trask relief on his ineffective assistance of counsel claim was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law. *Evans*, 703 F.3d at 1325. Accordingly, I cannot grant the habeas corpus application as to Trask's ineffective assistance of counsel claim as to an insanity defense, and it is hereby

**ORDERED AND ADJUDGED** that United States Magistrate Judge Lynch's Report [DE 10] is **ADOPTED IN PART AND DENIED IN PART** as follows:

1. The Report is **DENIED** to the extent it finds Trask's trial counsel's performance was not deficient.

2. The Report is **ADOPTED** to the extent it finds under *de novo* review that Trask fails to demonstrate prejudice as to his speedy trial ineffective assistance of counsel claim.

3. The Report's conclusion that Trask has not met the prejudice prong of his ineffective assistance of counsel claim as to an insanity defense is **ADOPTED**.

4. The Petition for Writ of Habeas Corpus [DE 1] is **DENIED**.

5. The Clerk of Court shall **CLOSE** this case and **DENY** all pending motions as **MOOT**.

**SO ORDERED** in Chambers at West Palm Beach, Florida, this 28 day of August, 2015.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record